You should know that we have read your briefs and the authority cited in your briefs and looked at at least portions of the record and in the limited time available to you, you should feel free to get straight to the heart of your argument. We probably will have some questions for you. If you're not able to address a point that has been raised in your briefs, that's okay. You're not waiving anything. It's still under submission to us at the end of the argument. Today is really more of an opportunity for you to assist us as we try to decide your case. So feel free to get straight to the heart of your argument. We have a red, yellow, and green traffic light system. Please do not treat the red light as aspirational. If you are answering a question from the court when the red light shines, feel free to finish your answer, but do wrap it up and be mindful of our time. So we're going to hear the first case this morning is the United States v. Vergara. Mr. Beshear. May it please the court. Good morning, your honors. Good morning, counsel. The United States Supreme Court decision in Riley provides the analytical roadmap to decide this case. And following Riley, it doesn't seem to me that it does. Riley's about a search incident to an arrest, and this is a border search, is it not? Yes, your honor. Riley's not a border search, is it? Riley's not a border search case, but Riley does two very essential things that are analytically the same and that are applicable in this case. One essential to Riley's holding is its recognition about the significant privacy interests in cellular phones itself and that they are fundamentally different than physical searches. The second and really the more important part that's applicable here and why we say it's the analytical roadmap is it shows us how cellular phones and data in particular implicates the government's interests when we're looking at a warrant exception from the Fourth Amendment's, from the warrant requirement to the fourth. Would you agree with me that for Fourth Amendment purposes, it's really hard to that's where there's a greater expectation of privacy than a home? No, your honor. I actually would not agree. And it's unfortunately not me who can make the decision because the unanimous Supreme Court said that a typical search of a cell phone would expose one to far more than the most intrusive or far more than the most exhaustive search of one's home. So the Supreme Court in Riley itself, and that is a key distinction because we have case law from this circuit dealing alfaro-moncada, which would undermine our case entirely if it was just the home. But what makes this case different is that we're on the opposite end of the spectrum. The cellular phone has qualities not only that are beyond the home itself, but the cellular phone in space and time. But the other part of Riley that's so important and why Justice Roberts is this as being an essential part of the human anatomy, a proverbial alien would think of it as a part of an anatomy, is it's a device unlike the home and unlike what our founders could have ever imagined and unlike what Judge Karnes was talking about in alfaro-moncada as a fixed place in one's on land. This is a device we cannot travel without. It has become an essential part of human life. And if this is a border search, we don't even have to have reasonable suspicion, do we? Unfortunately, or fortunately for us, what we're dealing with here is all Fourth Amendment inquiries, and Riley makes this point, citing to well-established precedent Wyoming v. Hutton, Justice Scalia's opinion, that all Fourth Amendment inquiries first begin by looking at how a search was viewed at the time of the founding of the amendment itself and where that inquiry does not yield an answer, or as Riley says it, or in Birchfield, other cases as well, where absent precise guidance, we have to go back to fundamental principles of reasonableness. And that is, again, why I go back to saying why it's the analytical roadmap, because essentially that's what we're looking at here. If this is a border search case of a physical search or a search of a person, that is well-established precedent that I want to make clear. The court would not disturb any of that precedent today, whether it is physically searching a phone to inspect that it's a bomb, that has a chemical weapon, a disease. These are very, very real threats, and we do not want to impose upon this court that we're undermining any of that precedent. What we're specifically talking about is what was implicated in Riley itself, which is the content in the cellular phone. And what Riley said is because it's so different, we have to revert back to fundamental principles of reasonableness. And that test is, on the one hand, looking at the privacy, which Riley has answered 50% of the equation, and our task... Well, can the border agents search an individual who's entering the country at the border for contraband? Yes, Your Honor, and that... Isn't child pornography contraband? Absolutely, Your Honor. And this is, again, a very critical point because Riley addresses this pre-digital, post-digital analogy head-on and rejects that very argument. One of the real benefits of having Riley is all of the arguments about pre-digital or closed container analogies were raised in Riley itself, and the court quite eloquently explained why those don't translate over for the need for... And the critical language here is warrantless searches, and the point of the real strength of our rule and what we're advocating for the warrant requirement is that in the vast, vast majority of cases, we know this from evidence, the United States government would not be prevented from finding contraband on a phone when the search has to occur. But there's a few data points that are critical, and this was relied upon in Riley itself. We looked at the actual facts on the ground, the evidence. So we know, present day, even with an increase in border searches, there is less than one-hundredth, one-one-hundredth of one percent of all searches that occur. And cited to in Riley, McNeely, and in Birchfield as well, the court has recognized in most jurisdictions, it takes less than 15 minutes to get a warrant, which is less time than it takes to search the phone itself. Can we talk for a moment about the forensic search of the telephone? Yes, Your Honor. My understanding of your position is that you analogize the forensic search of the phone here to an invasive body search. If I'm analogizing it to that, I... Well, what I'm trying to get at is that I think the law on the search, it would provide for reasonable suspicion in the case of an invasive body search at the border. If that's what's coming across, I've misrepresented slightly what the position is, because in actuality, the forensic search gets at the heart of the issue, because what Riley tells us, this forensic versus cursory framework is abrogated. It completely dismisses the concept altogether. The search at issue in Riley itself was looking at text messages and call logs, and the court said even that was... Well, the forensic search of the telephone exposes the owner of the phone to having the entire contents of the phone to be divulged. Isn't that correct? Yes, Your Honor. So to answer your question... That's from your perspective, that's at the point where you see the widest range of privacy concerns to be elevated? For the purposes of this we are in the forensic, in the extreme world. But to the exact point about equating to a body search, the real point is that there is no comparison. It's in the most invasive search of a person would still not tell you what occurred six months ago, or could not tell you... Well, from your perspective, the search of the phone is even more invasive than a body search. From Riley's perspective. So whatever level of protection that's afforded to a body search, you would argue by rationale, must necessarily be applied to the phone? I believe from Riley itself, the logic would extend would be far more and greater because any physical... What's the law on the circuit on invasive searches at the border? Well, invasive searches, this court has looked at body cavity, strip search, and held that reasonable suspicion applies. Reasonable suspicion is required, so the circuit does have extant law that does require some level of suspicion at the border. I'm just addressing this question because the border issue, as the presiding judge pointed out, is the key distinguishing factor between Riley and this case. And the question for our court, I think, is does Riley bite at all? Does Riley require an adjustment of border search law? The reason why I came back to the forensic search is that I think the argument can be made that the search and the forensic search of the phone is equal to or greater than a privacy invasion of an invasive body search. I think that's right, Judge Clevenger. The only question then would be whether the law on the circuit that already establishes reasonable suspicion at the border for an invasive body search teaches us anything about how we should treat the telephone. Yes, and I think for purposes here, if... And mindful of... We have the doctrine of constitutional avoidance, so, you know, the reason that we distinguish even between cursory and forensic is even if the court were to engage in that analysis, the forensic, I think, is a clear answer about the level of invasiveness. But there's really two critical points why, to use your language, why Riley bites at the phone. Because the phone is, unlike a physical search or a body cavity, it would expose what occurred six months ago, what occurred back at home, something that is not even at the border itself that physical. And also, when we're looking at what the court is referring to as invasive, Riley looks at each element of not only quantity, quality, but pervasiveness. And in that balance, explicitly, explicitly rejects why reasonable suspicion would provide no meaningful limitation. And the facts of this case prove that to be correct as well. So... Can I ask you a question about the cursory search? Yes. At what point in time, in your view, does a cursory search of a smartphone cease to be cursory and move into a more invasive search? And if I'm answering the question as honestly as I can, that is the problem because I... That's why I asked the question. I... Riley itself rejects the notion that there is a cursory search. The only reason we're even engaging in that language... I wasn't asking the question through the eyes of Riley. I was asking the question, if you're standing at the border, you come in and you've got your telephone and the customs agent asks you to look at your phone. And so he says, turn it on, I suppose. And at what stage does the officer's handling of that phone cease to be a cursory search and move into a more invasive search? I... The answer to that question, I think, is the reason why their reasonable suspicion or a cursory search framework is unworkable because it would depend at every stage. Some would argue, as Riley would say, is reading emails the equivalent of reading a letter? Are you suggesting that sort of the entire law of border searches has to be upended because of Riley? You're telling me we don't even consider the scope of a cursory search? That sort of two-step procedure, as I understand it, has been embedded in border search law and activity like from ever. I'm not sure that that can be correct as to looking at cell phone content itself. A simple illustration would show that if an officer asked to see a phone and a cursory search could include, let me click on your Chase banking app. Now, courts would be left to wonder, is that the equivalent of looking at a banking statement? Riley makes this point very clear. Because of the quality and the seemingly limitless amount of information that's gathered in that one area, that looking at the content of the phone itself blends itself into all sorts of weird line drawing scenarios. So you're saying that the officers can't require the person entering to turn on the phone? Oh yeah, no, no. By all means, you can turn on the phone. If there's something, there's something in plain view, you can look and see what's on the phone itself. What we're getting into is looking at emails, text messages, as what occurred in this case, looking at the pictures, all of the apps on the phone, videos. That's going into content-based information. Your entire argument is dependent on Riley, right? So if we conclude that Riley is about a different problem, the exception to the warrant requirement for a search incident to an arrest, and that that law just does not govern a case at the border, then you're out of luck, right? Yes, Your Honor, I would be out of luck, but I would sincerely say if we look at Riley itself, that is inconsistent with the way the Fourth Amendment analysis occurs because Riley tells us that cell phones are different. Riley makes no distinction between looking at an email versus a forensic search, and Riley says we need to rebalance. And it says zero about the border. Yes, Your Honor, but what it does tell us is about cell phones and the nature of how those implicate the government's interest at the border, and it tells us data is not a physical threat. We know that border searches are different from what happens domestically. And if this court were to hold that searching a cell phone content at the border was lawful under the Fourth Amendment, as Riley would say, it would be the functional equivalent of allowing one to enter far more into a person's home and expose the privacies of one's life simply because that citizen is crossing the border. It would be the same as what we've allowed in a home. Never before, and if I may finish this last point, never before in our nation's history have we traveled with a device that would allow us to not only travel home, but back in time and reveal all the privacies of our life. And that is what is at stake in this case. Thank you. Ms. McNamara. May it please the Court, Linda McNamara for the United States. No court has ever held that a search at the border, no matter how invasive of our privacy, whether of a person, a person's body, a person's home, a person's property, requires probable cause and a warrant. Yet Vergara comes today and asks this court to determine that cell phones are so special that our privacy interest in cell phones is so different than even in our bodies and in our homes, that it deserves a higher degree of Fourth Amendment protection than any court has ever recognized at the border. The Supreme Court has never said that border searches can be unlimited, right? Or that they don't have to be reasonable. That's correct, of course. Border searches, like any other search under the Fourth Amendment, have to be reasonable. But to determine the reasonableness of a border search, just like any other search, we have to examine the justification for the search in relation to the invasion of privacy. But the Supreme Court has said that searches at the border from before the adoption of the Fourth Amendment have been considered to be reasonable by the single fact that the person or item in question had entered into our country from outside. That's correct. And that's because of the justification for the border search exception to the warrant requirement. A point that he hasn't, Vergara's counsel, didn't even address in his argument. What kind of cases has the Supreme Court required reasonable suspicion for a border search? There's only one case in which the Supreme Court has required a heightened degree of suspicion at the border, and that was for the extended detention of the suspected body carrier. That was the Montoya de Hernandez case. The woman who was suspected of carrying drugs in her elementary canal. If you measure the quality of the invasion of privacy that's involved in a body search, invasive body search, which would require reasonable suspicion, then your adversary is arguing that the forensic search of the smartphone is even more invasive of privacy interests than the invasive body search from the perspective of the owner of the property interest. What's your response to that, please? Well, I have several responses to that. First of all, first being, I think most of us, if given the option of having our cell phone search or having a body cavity search, would choose a cell phone search. The nature of the privacy invasion of our bodies is just qualitatively different. What basis do you have for that assertion? I think that's... Other than your personal view. Well, that is a personal feel. But this court also has held that it's not just extensiveness of a search that matters. It's the personal indignity suffered by the individual search that controls the level of suspicion required to make a search reasonable. You only required it for something like a strip search. Correct. Highly intrusive. That's right. The factors to be looked at include physical contact between the searcher and the person searched, exposure of intimate body parts, and use of force, right? That's right. This court has only held that there could be a heightened degree of suspicion required in personally humiliating invasive searches of a person's body and have suggested that perhaps in the case... In all other cases, we have said searches at the border do not even require reasonable suspicion, correct? That's correct. The court has suggested that there may be some destructive searches of property may require a heightened level of suspicion. There was no destruction here, right? Absolutely no destruction here. And in fact, I think the fact that cell phones are qualitatively different from other types of containers, which is basically what his argument is, only heightens the justification for the need to search here. Cell phones can carry digital information regarding who a person is, where they've been, where they're going, what they're doing, what their intentions are. Those are all the things that border agents are entitled to examine at the border. That's their purpose. And so the fact that a cell phone can carry all that information doesn't make it immune from search. It means it's more important that officers at the border should be able to search the without any type of suspicion. So following your argument to its logical conclusion, the officers would be entitled to search the cell phone for any crime that they might find on there, even if it has nothing to do with national security or contraband or who the person is entering at the border. Judge Pryor, Wren established that we don't look at the subjective motivations of the officer searching. We looked at whether there is an objectively reasonable basis for the search. So the answer to my question is yes. Yes, we do. We look at whether there is an objectively reasonable basis. And regardless of whether that officer thinks, I think this guy might have something on his cell phone regarding some state crime, that doesn't matter because a border search is inherently reasonable just because it occurs at the border. We don't look at the subjective modifications. So the officers at the border could do a forensic search of the cell phone of anyone crossing the border, according to your argument. Yes, yes, absolutely. Let me ask you about the argument in your brief that border crossings are voluntary and that people have the ability to leave the item at home or wherever they were traveling. Is that realistic in the context of cell phones? It's always realistic that we choose what to bring with us. And although it is a modern day reality that we all travel with our cell phones, we always have the choice of what's on our cell phone. But that's not really true, is it? If you look at the Cotterman case from the Ninth Circuit, they make a very persuasive case that you really can't because in a forensic search, even things you've deleted are still on your phone. That's true. But we can always choose to carry a different phone, a phone that's never had contraband on it. You can buy a used by the minutes phone. If you're concerned about the search might uncover something that you don't want border agents to see, there are ways to prevent that. And in fact, the ACLU and some other organizations have posted tips on the Internet as to how to protect your private information from being searched at the border. This is a choice that you make when you travel. You know that you're going to be searched. If you look at the CBP's website, there's all kinds of information freely available about being subject to search, including electronic searches. You can even find on the CBP website that that tear sheet that's given to travelers whose electronic devices have been selected for search. And in your brief, as well as in your presentation on the motions excluded below, you argued that this case could be disposed of or decided properly on the good faith exception. Yes. That issue you frame below, but I didn't see any reference in the district court's opinion to that issue. Would it be proper for us to decide the case on the good faith exception basis? Yes. Elide the difficult, the potentially difficult issue that's in front of us? I think that's entirely appropriate. And despite that, the district court... To say that, don't you have to assert to me that there isn't any possible finding of fact that would stand in the way of that decision? Because we don't have a ventilation opinion. We don't have anything written by the district court judge telling us why the district court judge would either accept or reject your good faith exception argument. Well, this court can affirm on any basis supported by the record. And so long as the record shows that the officers had a good faith basis for conducting the case, there's no reason to exclude the evidence. The record would have to show that the facts that underlie that determination of law are essentially undisputed, right? That's right. And I can think of no facts here that are disputed that would make differences into the good faith inquiry. Here, the officers had no reason to think that they couldn't search Vergara's cell phone without probable cause and a warrant because no case had ever held that. And they had no reason to think that Riley changed that because, of course, Riley was not a border search case. And in fact, even since... Are there existing instructions to border agents post Riley? I found in my research a document that was prepared within the Border Patrol Service talking about cell phones and cell phone use. But I didn't see anything in there that suggested there were any limits on the authority of the border agent to search. I know of nothing. I'm trying to get it as a border search agent instructed by his or her superiors that this is what you're allowed to do. This goes into the mind of the agent as to whether they were reasonable in thinking they had the right authority to search. Right. And the only things that the officers are instructed what they're allowed to do is that they are allowed to search without any type of suspicion. Officers are not instructed that they need any type of either reasonable suspicion or certainly probable cause. There are extensive rules about the chain of custody and how you take care of what you're supposed to do with a phone once you've taken it, how long you can keep it where you have to. Exactly. Right. And Your Honor, I assume found that on the CBP website. That's all readily available to anyone traveling. Easy to find on the Internet. And the officers here certainly had no reason to believe that they needed probable cause or a warrant. Indeed, since Riley, no court, appellate court or otherwise, has held based on Riley or anything that probable cause and a warrant is needed at the border. So the officers here. Well, am I right that no circuit has been presented with the question? When you say none as hell suggests that they have. Well, not exactly. There is, there is the one case, Escagara, which is an unpublished decision that I filed in my supplemental authority letter that. It's a district court opinion? No, no, that one is a, that is an unpublished decision in the Fifth Circuit. There, the defendant's phone searched at the border without any type of, the initial manual search at the border. In that case, a warrant was obtained. Based on the information found on the initial suspicionless search of the phone. There's also a case pending in the Fourth Circuit that's called Calzuz. That one has been argued, but there has been no decision yet in that, that opinion. No, there's no, there's, there's no precedential appellate court ruling post Riley dealing with the issues that we're being presented with today. Which is all the reason why the officers here had good faith in, in, and no reason to believe that they couldn't search without a probable cause or a warrant. And just, I just wanted to make one final point, and I think that it's important to at this time as cell phones are becoming more and more used to carry digital content, including digital contraband, like child pornography, pirated movies, music, software, and those types of things. We shouldn't be curtailing officers' ability to find those things and to prevent them from crossing our borders. Can you think of other categories of contraband that might be on the phone beyond images, the type of thing you just mentioned? Well, copyrighted, copyrighted infringement materials. Like I said, pirated bootleg movies. Beyond that. Malware, software. Not the customary type of contraband that the border people are looking for. Jewelry. No, it's not. But there's also information on the phone regarding a person's identity and what, who they are, who they really are, what their purpose is in entering the country. There may be terrorist plans, text messages, things of that nature. All things that border agents need to be able to find to be able to determine whether the person and his possessions are entitled to enter the country. Any other questions? Thank you. Thank you, Ms. McNamara. Mr. Beshear, if you have a minute. Thank you, Your Honors. First, to the good faith point. The United States entirely shifts the burden. This court's precedent is explicitly clear from the United States, Davis versus United States, that searches conducted on objectively reasonable reliance on binding appellate precedent. There is no binding appellate precedent, as we just heard from this circuit or any other circuit addressing the search of a cell phone, particularly post Riley. And if that were true, Riley himself would have lost because prior to Riley, all search. Well, there's no precedent that says it's unlawful. The burden is on the government, as Your Honor was alluding to earlier. There's nothing from the district court. This was not even pressed at the suppression hearing itself, and it would devolve into reliance on a CPB directive, which that I can only think of would be the greatest extent. Isn't the panel capable of surveying the law of the circuit and ascertaining whether or that would have precluded a border agent from having a good faith belief? I think in this circuit. Who better to decide the legal question than the appellate court? Yes, Your Honor. But that question, I see my time is up, would have to be based on binding appellate precedent. If I could just make one point on that, where this court has applied that Leibovitz as a decision, Rice Snyder, is based on pre-Gantt cases of where the court had explicit authority allowing a search of a vehicle pre-Gantt. Here, we do not have any authority from the circuit addressing the factual scenario here, and I respectfully request that the court following Riley rule in our favor. Thank you, Your Honor. Thank you, Mr. Bashir. We have your case.